UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 APR 28 PM 3: 36

CLERK

BY_____
DEPUTY CLERK

GLOBAL VALUES, INC. )
)
    Plaintiff, )
)
V. )
) Case No. 2:21-cv-119
MICHELLE R. PARKER, and )
MURETA GRANITE COMPANY, LLC, )
)
    Defendants. )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

In connection with the purchase of the assets of Parker's business, Montpelier Granite Works, LLC, Global Values agreed to employ Parker in the position of Accounts Manager (Sales), and Parker and Global Values entered into a written Employment Agreement, effective as of March 3, 2017 ("Employment Agreement"). Material terms of the Employment Agreement include Parker's covenants not to compete with Global Values for a period of one (1) year, and not to solicit Global Values' customers for a period of five (5) years, following the termination of her employment for any reason. Parker voluntarily terminated her employment with Global Values on December 22, 2020. On or about February 1, 2021, Parker formed a limited liability company, Defendant Mureta Granite Company, LLC ("Mureta"), for the express purpose of competing with Global Values' business, soliciting its customers, and otherwise interfering with Global Values' present and prospective contractual and business relationships, in direct violation of her covenants.

Parker has clearly breached and continues to breach her covenants. Through their unlawful actions, Defendants have misappropriated Global Values' valuable customer goodwill and critical

1

confidential and trade secret information concerning the Company's product capabilities, operations, and relationships with its largest customers. If Defendants are not prohibited from unlawfully competing with Global Values, Global Values' trade secrets, confidential information, and goodwill will be so compromised that it will suffer substantial, irreparable, and potentially fatal harm. Accordingly, Global Values asks this Court to order that Defendants immediately cease any illegal conduct, desist from further illegal conduct, and, with respect to Parker, honor her contractual obligations to Global Values.

## FACTUAL BACKGROUND[1]

### I. Global Values' Business.

Global Values' business centers upon granite products and, in particular, granite monuments and memorials.[2] Global Values manufactures such products, including through its etching, carving, and sandblasting capabilities, and also distributes and sells its domestic and imported granite products to customers throughout the United States. Global Values operates facilities in Barre, Vermont, Palatine, Illinois, and Elberton, Georgia. The Company employs approximately 45 people in Barre, Vermont, and Global Values' Barre location accounts for approximately 70 percent of its revenue company-wide.

As a manufacturer and distributor, Global Values conducts its business primarily by selling its products to customers on a wholesale basis. More than 99% of the customer base for Global Values is Business to Business customers. These are mostly family owned small businesses where the relationship with the customer is critical to earn the business.

---

[1] Each fact set forth herein is attested to in Plaintiff's Verified Complaint.
[2] https://www.timesargus.com/news/business_vermont/business_vt_news/with-barre-purchase-granite-firm-grows/article_869971ab-0cbd-5442-b99a-6be429458bbb.html

2

In 2015, Global Values made a significant expansion into manufacturing in Barre, Vermont. Soon, Global Values realized successful domestic manufacturing requires critical volume to achieve scale of efficiency. To obtain additional volume of domestic manufacturing business, Global Values identified Montpelier Granite Works, Inc., a Vermont corporation, as a business with a long standing stable customer base. Acquiring that customer base and adding that volume to Global Values' production mix would provide the optimum level of efficiency. Effective March 3, 2017, Global Values' sister company, Global Values Montpelier, LLC, purchased all of the personal property assets of Montpelier Granite Works, Inc. used in its conduct of the granite business, including but not limited to all tools, work in progress, office equipment and furnishings, customer lists, vendor lists, project records and plans, business accounts, and goodwill, pursuant to a written agreement signed by PARKER as the President of Montpelier Granite Works, Inc. The assets were subsequently conveyed by Global Values Montpelier, LLC to Plaintiff Global Values, Inc.

**II.  Global Values Hires Parker in Connection with the Sale of Montpelier Granite Works, Inc. and Provides Parker with Regular Access to Global Values' Trade Secrets, Confidential Information, and Extensive Customer Base.**

Global Values hired Parker in connection with the purchase of the assets – including customer goodwill – of Montpelier Granite Works, Inc. Parker personally executed the Bill of Sale as President of Montpelier Granite Works assets to Global Values, as well as the Employment Agreement under which she accepted employment with Global Values as an Account Manager (Sales) (the "Parker Employment Agreement"). As an Account Manager (Sales), Parker had constant access to Global Values' most commercially sensitive trade secrets and confidential information, including, for example, its sales strategies with respect to some of its largest customers; plans for retaining existing customers; key customer contacts; information concerning the Company's areas of strength and weakness with specific customers; knowledge of Global

3

Values' volume discount strategies, including the lowest price Global Values would be willing to offer its largest customers; and its confidential database containing all customer information, including, for all customers serviced by the Company's Barre location, every customer's specific product needs, product-specific order volume and demand, and pricing and discount arrangements. With regard to Global Values' confidential database, Parker had the highest security authorization possible for a sales employee and had access to all sales information related to any customer who purchased from, or whose account was serviced by, the Barre office.

In addition to Parker's constant exposure to Global Values' confidential information and trade secrets, Parker was primarily responsible for managing, servicing, and generating sales from Global Values' existing accounts and the former Montpelier Granite Works Accounts to which Global Values purchased goodwill in conjunction with its acquisition of Montpelier Granite Works' assets. Parker was tasked with maintaining and expanding Global Values' relationships with its customers. For one, Parker managed all former Montpelier Granite Works customer accounts – which Global Values had purchased - on behalf of Global Values. Additionally, Parker was responsible for proactively managing, maintaining and expanding upon Global Values' goodwill with other repeat customers, and leveraging that goodwill to generate additional sales. Repeat customers are of paramount importance to Global Values; indeed, approximately 95 percent of its sales revenue stems from sales to returning customers. Accordingly, Global Values' ability to sustain and grow its business is fundamentally dependent upon its sales team's – including Parker's – ability to build and maintain these long-term relationships.

### III. Global Values Implements Stringent Measures to Protect its Assets and Business Interests.

The omnipresent threat that a competitor could poach a Global Values employee to obtain access to its trade secrets and confidential information necessitates that Global Values expend significant resources to maintain the security of this information. Global Values stores a large amount of its customer-related information on the aforementioned database, which is password protected, is only accessible by select employees, and is structured in a manner in which employees' access to different tiers of the database is limited based on their roles and their need to know this information in the day-to-day performance of their job duties. With respect to trade secrets and confidential information that are not stored on the database, Global Values limits employees' access to such information on a need-to-know basis and requires employees who are granted access to such information to execute restrictive covenants including, for example, confidentiality, non-solicitation, and non-competition covenants. Finally, when an employee leaves Global Values, the Company immediately terminates the employee's access to its confidential information, trade secrets, databases, and network.

### IV. Global Values Conditions Parker's Employment on her Agreement to Narrowly-Tailored and Reasonable Restrictive Covenants.

Because of the extensive access Global Values' employees have to its trade secrets, confidential information, and customer relationships, the Company conditions the employment of its key employees, such as Parker, on their voluntary agreement to reasonable restrictive covenants. Specifically, the Parker Employment Agreement contains the following narrowly-tailored restrictions on Parker's post-employment conduct:

> "[F]or a period of **one (1) year** after the termination of employee's employment for any reason . . . employee [shall not] directly or indirectly engage in any business that is competitive with the business of employer within 100 miles of Barre, Vermont."

> "**For a period of five (5) years after termination of employee's employment for any reason, employee** shall not solicit or do business with or compete for customers

5

of the employer whom the employee worked with during their employment with the employer."

*See Verified Compl. at Ex. B, § 8(B).*

Parker acknowledged that breach of these restrictive covenants would result in irreparable harm to Global Values, and that Global Values would be entitled to injunctive relief and to recover its attorneys' fees incurred in enforcing the covenants as follows:

> "Employee agrees that this non-competition covenant is necessary to protect employer's business and that the employee's violation of this section would result in irreparable harm to employer. In the event employee breaches this section either while employed or thereafter, employer shall be entitled to injunctive relief, compensatory and consequential charges and any other remedies legally available, plus the costs of enforcing the covenant including reasonable attorney fees."

*See Verified Compl. at Ex. B, § 8(C).*

Parker further agreed to protect Global Values' trade secrets and confidential information as follows:

> "Employee shall not at any time or in any manner, either directly or indirectly, divulge, disclose or communicate to any person, firm, corporation, or other entity in any manner whatsoever any information concerning any matters affecting or relating to the business of the employer, including without limitation, any of its customers, the prices it obtains or has obtained from the sale of, or at which it sells or has sold, its products or services or any other information concerning the business of the employer, its manner of operation, its plans, processes, or other data without regard to whether all of the above-stated matters will be deemed confidential, material, or important. . . ."

*See Verified Compl. at Ex. B, § 8(A).*

Parker understood and expressly agreed that breach of these covenants would cause irreparable harm to Global Values, that the restrictive covenants would not impose undue hardship on her and would not be injurious to the public interest, and that they protected Global Values' legitimate interests in its business. *See* Verified Compl. at Ex. B, § 8.

Global Values would not have employed Parker, or provided her with access to its trade secrets, confidential information, and goodwill, if it knew that she would not honor these narrowly tailored post-employment restrictions.

## V. Parker Voluntarily Terminates her Employment with Global Values and Forms Mureta for the Express Purposes of Competing with Global Values' Business.

Parker voluntarily terminated her employment with Global Values on December 22, 2020. Upon notifying Global Values of her resignation, Parker assured Global Values that she would abide by her covenants. However, on February 16, 2021, Parker formed Mureta for the express purpose of competing with Global Values' business, soliciting its customers, and otherwise interfering with Global Values' present and prospective contractual and business relationships and expectations.

In March 2021, Parker confirmed in writing that she intends to violate her covenants. Parker, individually and d/b/a Mureta, has willfully breached her covenants with Global Values, and has tortiously interfered with Global Values' contractual relations with its customers, vendors, suppliers and employees, and continues to do so. Mureta, with full knowledge of Parker's covenants with the Company, has authorized and induced her to breach them for the benefit of MURETA and its principals, and has thereby tortiously interfered with Global Values' contractual relations with its customers, vendors, suppliers and employees, and continues to do so.

Through their contractual breaches and tortious interference, Parker and Mureta, have misappropriated Global Values' valuable trade secrets and other confidential information and goodwill, and have been and continue to be unjustly enriched thereby. Global Values has demanded that the Defendants cease and desist their unlawful conduct and provide written assurances and an accounting, but Defendants have refused. *See Verified Compl. at Ex. C.*

7

## **LEGAL ARGUMENT**

Global Values seeks to enjoin Parker from violating the restrictive covenants in her Employment Agreement and to enjoin Parker and Mureta from further tortiously interfering with Global Values' contractual relations with its customers, vendors, suppliers and employees, as well as enjoin them from further misappropriating Global Values' valuable trade secrets and other confidential information and goodwill in order to be unjustly enriched thereby.

A party seeking injunctive relief – whether in the form of a temporary restraining order or a preliminary injunction – must demonstrate: "(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in [the party's] favor." *Citigroup Global Markets, Inc. v. VGC Opportunities Master Fund Limited*, 598 F.3d 30, 35 (2d Cir. 2010); *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996), quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.* 596 F.2d 70, 92 (2d Cir. 1979) (per curiam); *see also Echo Design Group, Inc. v. Zino Davidoff S.A.*, 283 F. Supp. 2d 963, 966 (S.D.N.Y. 2003) (same legal standard applies to a request for temporary restraining order and preliminary injunction). Global Values has presented the Court with ample evidence to support the entry of a temporary restraining order and preliminary injunction in this case.

I. **GLOBAL VALUES WILL SUFFER IRREPARABLE HARM IF INJUNCTIVE RELIEF IS NOT GRANTED.**

Irreparable harm is defined as "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd.*, 339 F.3d 101, 113 (2d Cir. 2003); *see also Tom Doherty Assocs., Inc. v. Saban Entm't Inc.*, 60 F.3d 27,

37 (2d Cir. 1995). A showing of irreparable harm "is the single most important prerequisite for the issuance of" injunctive relief. *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d904, 907 (2d Cir. 1990) (internal quotation marks and citation omitted). The moving party must demonstrate a "risk" of harm or that harm is "likely." *Id.*; *Johnson v. Kay*, 860 F.2d 529, 540 (2d Cir. 1988). Any "alleged injury must be one incapable of being remedied by monetary damages." *Reuters*, 903 F.2d at 907.

Parker's and Mureta's actions – and the circumstances under which they were taken – unambiguously affirm an intention to irreparably harm Global Values. Parker has informed Global Values that she does not intend to honor the restrictive covenants, and she formed a limited liability company for the purpose of competing with Global Values. Parker is armed with extensive Global Values' trade secrets, confidential information, as well as goodwill with its longstanding customers and the goodwill of customers purchased from Montpelier Granite Works. Parker is aware that her competition with Global Values through Mureta is a direct violation of her Employment Agreement and the restrictive covenants that she willing entered into.

Accordingly, the combination of (1) Parker's possession of Global Values' key customer relationships, her knowledge of its sales strategies, pricing and discount strategies, and customer-specific arrangements, including the lowest prices that Global Values can offer to specific customers and (2) her knowledge of Global Values' confidential supply chain operations, including Global Values' product-specific vulnerabilities, in the hands of a competitor who has brazenly stated that she does not intend to cease her operations, creates a perfect storm of irreparable harm. These circumstances will allow Parker d/b/a Mureta to front-run Global Values' business strategies, undercut its prices, and lure away its customers – including the customer lists and goodwill purchased as part of the asset sale of Montpelier Granite Work – constituting the type of harm that

9

courts consistently regard as irreparable. *See, e.g., N. Atl. Instruments, Inc. v. Haber*, 199 F.3d 38, 49 (2d Cir. 1999) ("loss of trade secrets cannot be measured in money damages because a trade secret once lost is, of course, lost forever") (internal quotation marks and citation omitted); *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69-70 (2d Cir. 1999) (it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come"); *Mercer Health & Benefits, LLC v. DiGregorio*, 307 F. Supp. 3d 326, 347 (S.D.N.Y. 2018) ("It is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm."); *Majestic Corp. of America, Inc. v. Crepeau*, No. 1:06-CV-35, 2007 WL 922267, at *4 (D. Vt. March 23, 2016) (former employee's potential use of employer's confidential information, and solicitation of former clients, constitutes irreparable harm); *Bio-Imaging Techs, Inc. v. Marchant*, 584 F. Supp. 2d 322, 330 (D. Mass. 2008) (irreparable harm likely where sales employee had access to confidential information while employed by former employer, was responsible for maintaining customer relationships, and became employed by competitor).

Accordingly, Parker's potential breach of her confidentiality and customer non-solicitation restrictions, along with her refusal to honor those obligations, threatens Global Values with a continuing business injury – namely, the intangible economic damage attributable to confidential information disclosed to a competitor, and lost business opportunities resulting from such disclosure and use of Global Values' goodwill. Although the harm to Global Values is certain, it cannot be fully remediated by money damages.

Indeed, Parker acknowledged in her Employment Agreement that breach of the restrictive covenants would result in irreparable harm to Global Values. An employee's acknowledgement

that breach of a restrictive covenant will result in irreparable harm to its employer supports a finding of irreparable harm. *N. Atl. Instruments, Inc.*, 199 F.3d at 49 (finding irreparable harm based in part on employee's acknowledgement that breach of confidentiality clause would cause irreparable injury to employer); *Mercer Health & Benefits, LLC*, 307 F. Supp. 3d at 348 (same, with respect to non-competition and non-solicitation clauses).

Under these circumstances, an injunction is warranted to restrain Defendants' conduct.

## II. GLOBAL VALUES HAS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS BREACH OF CONTRACT CLAIMS

Global Values is more than reasonably likely to succeed on the merits of its breach of contract claims against Parker because she has breached the clear and enforceable terms of her Employment Agreement and formed a new business, to clear purpose of which is to misappropriate Global Values' trade secrets and confidential information – including information that Parker already sold to Global Values as part of the Montpelier Granite Works asset sale, and additional information she acquired through her employment with Global Values.

### A. Parker's Restrictive Covenants are Fully Enforceable under Vermont Law.

Restrictive covenants are generally enforceable against employees under Vermont law, unless they are contrary to public policy, unnecessary for the protection of the employer, or unnecessarily restrictive of the rights of the employee in light of the geographic or temporal restrictions therein. *Systems and Software, Inc. v. Barnes*, 178 Vt. 389, 391 (2005), citing *VT Elec. Supply Co. v. Andrus*, 132 Vt. 195, 198 (1974). Here, there can be no legitimate dispute that Parker has breached the non-competition clause of her Employment Agreement.

1. **The Employment Agreements are Necessary to Protect Global Values' Legitimate Business Interests in its Trade Secrets, Confidential Information, and Goodwill.**

The restrictive covenants in Parker's Employment Agreement should be enforced in this case because it is (1) necessary to protect Global Values' legitimate business interests; (2) reasonably limited in duration and scope; and (3) otherwise consonant with public policy.

The restrictive covenants in Parker's Employment Agreement are plainly necessary to protect Global Values' trade secrets, confidential and proprietary business information, and customer and employee goodwill, all of which qualify as legitimate business interests warranting protection. *See, e.g., Systems and Software, Inc.*, 178 Vt. at 392-93.

Parker was privy to Global Values' trove of trade secrets and confidential information. This includes, for example, each customer's individualized product needs and product-specific order volume; pricing and discount arrangements; key customer contacts; information concerning the Company's areas of strength and weakness with specific customers; plans for retaining specific customers; the frequency and quantity of each customer's order; the terms of Global Values' relationships with strategic business partners, including international entities from whom Global Values obtains imported granite products; and Global Values' sources for obtaining imported products that have been discontinued; and the amount of stock that Global Values carries of various products. Such information, which is known only to select personnel within Global Values, is the exact type of information courts repeatedly hold is entitled to protection. *See Systems & Software, Inc.*, 178 Vt. at 392 (noting confidential customer information may be protected by non-competition agreements); *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.*, 323 F. Supp. 2d 525, 532-33 (S.D.N.Y. 2004) (trade secrets and confidential customer information includes "pricing methods, customer lists, and customer preferences"); *Unisource Worldwide, Inc. v. Valenti*, 196 F. Supp. 2d 269, 278 (E.D.N.Y. 2002) (customer lists, pricing, product history, and volume information are trade secrets protectable through restrictive covenant).

12

Moreover, Parker possesses substantial customer goodwill belonging to Global Values – goodwill that is undoubtedly imperiled by her creation of Mureta to directly compete with Global Values. Courts routinely recognize that non-competition agreements are enforceable against employees with sales and customer-facing responsibilities because such individuals are in a unique position to exploit their former employer's goodwill. *See, e.g., Garber Bros., Inc. v. Evlek*, 122 F. Supp. 2d 375, 381 (E.D.N.Y. 2000).

### 2. The Restrictive Covenants are Reasonable in Scope and Narrowly Designed to Protect Global Values' Legitimate Interests.

A covenant not to compete is enforceable if it is reasonable in time and geographic area and is tailored to the employer's legitimate business interests. *Summits 7, Inc. v. Kelly*, 178 Vt. 396, 400 (2005); *VT Elec. Supply Co. v. Andrus*, 132 Vt. 195, 198-99 (1974). The non-competition and non-solicitation provisions in the Parker Employment Agreement are far less restrictive than those that courts regularly enforce.[3]

First, Parker negotiated and agreed to her restrictive covenants in the connection with the sale of Montpelier Granite Works. Restrictive covenants entered into in conjunction with the sale of a business are subject to a low standard to protect the purchaser's interest in the assets and goodwill that it purchased for value. *Fine Foods, Inc v. Dahlin*, 147 Vt. 599, 603-04 (1986) (noting, in context of consideration of time and place restrictions, that covenant not to compete was executed in context of sale of business, was a primary part of the transaction, and purchase and sale

---

[3] This court previously addressed a far different iteration of a Global Values restrictive covenant agreement in *Fisher v. Global Values, Inc.*, 2006 WL 3251488 (D. Vt. Nov. 2, 2006). In response to that decision, Global Values narrowed the restrictive covenants to which its key employees are subject. Global Values' restrictions in its current restrictive covenant agreements are fully supported by the scope of its business – which has expanded significantly since 2006 – and the scope of its protectable interests attendant thereto. Parker freely negotiated and entered into her restrictive covenants in connection with the sale of Montpelier Granite Works, so the lower "sale of business" reasonable standard applies to her restrictive covenant. Importantly, the court in *Fisher* fully recognized Global Values' legitimate protectable interest in its confidential information (consisting of its product line, customer list, price structure, promotion and special prices, and specified granite colors) and held its non-disclosure clause to be fully enforceable with respect to such information. *Id.* at *7.

13

agreement specifically referred to delivery of the executed covenant); *see also Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26, 28 (2d Cir. 1987) (restrictive covenants ancillary to the sale of a business are routinely enforced to protect the goodwill paid for by the purchase); *Payment Alliance Intern., Inc. v. Ferreira*, 530 F. Supp. 2d 477, 483 (S.D.N.Y. 2007) (non-competition covenants that arise out of the sale of a business are subject to a lower standard than ordinary employer-employee restrictive covenants); *Boulanger v. Dunkin' Donuts, Inc.*, 442 Mass. 635, 639 (2004) ("In the context of the sale of a business, courts look 'less critically' at covenants not to compete . . . [and] are less concerned with unequal bargaining power between the parties.").

Moreover, in the Montpelier Granite works sale agreement, which Parker signed, the parties agreed that a component of the purchase price was "goodwill" – an asset that is at stake if Parker's agreement is not enforced and former Montpelier Granite Works' customers follow her from Global Values to Mureta. It is this very concern that warrants a lower standard for enforcement of restrictive covenants entered into in the sale of business context. *See Chevron U.S.A., Inc.*, 813 F.2d at 28; *Payment Alliance Intern., Inc.*, 530 F. Supp. 2d at 483; *Boulanger*, 442 Mass. at 639; *Fine Foods, Inc v. Dahlin*, 147 Vt. at 603-04.

One-year non-competition and five-year non-solicitation restrictions are upheld by Vermont courts in a non-sale of business context. *See VT Elec. Supply Co.*, 132 Vt. at 198-99 (affirming enforcement of five year restriction in non-competition agreement); *Summits 7, Inc.*, 178 Vt. at 403 (reasonableness of one year restriction not disputed). These restrictions are plainly reasonable here, where Parker freely negotiated her restrictive covenants in the context of the sale of the business and received valuable consideration for doing so.

Second, Parker's non-competition restriction only prohibits Parker from engaging in any business that competes with Global Values within 100 miles of Barre. This restriction is no greater

14

than necessary to protect Global Values' goodwill with the customers in Parker's immediate sales territory. Parker is free to secure employment with any organization anywhere in the world, subject to her non-solicitation restrictions, other than a manufacturer, distributor, or seller of granite products within 100 miles of Barre and thus the geographic scope of her non-competition restriction is also reasonable. *See, e.g., A.N. Deringer, Inc. v. Strough*, 103 F.3d 243, 248 (2d Cir. 1996) (suggesting 100 miles from office in which employee worked was a reasonable geographic limitation); *Majestic Corp. of America, Inc.*, 2007 WL 922267, at *5 (enforcing 75 mile geographic restriction). *See generally Marine Contractors Co. v. Hurley*, 365 Mass. 280, 289 (1974) (upholding a five year non-competition covenant because the former employee was free to engage in a different type of work or in the same type of work outside of a 100 mile geographic area, and "[t]he consequence of every covenant not to compete . . . is that the covenantor is deprived of a possible means of earning his living, within a defined area and for a limited time," but "[t]hat fact alone does not make such covenants unenforceable").

Finally, the Second Circuit, interpreting Vermont law, has found that factors weighing in favor of enforcement of a restrictive covenant include the former employee's voluntary departure and the employee's knowledge of confidential material. *A.N. Deringer*, 103 F.3d at 248, citing *Vt. Elec. Supply Co.*, 132 Vt. at 198. Parker left Global Values voluntarily and did so with knowledge of its confidential information. These facts, as well as the reasonableness of the restrictions imposed by the restrictive covenants, warrant a finding that Parker's restrictive covenants are enforceable.

### 3. Enforcing the Restrictive Covenants is Consonant with Public Policy.

The facts of this case reveal no public interest that would warrant non-enforcement of Parker's covenants. To the contrary, "[i]t is regarded as beneficial to the public that contracts for

15

the partial restraint of trade should be upheld to a reasonable extent." *New England Tree Expert Co. v. Russell*, 306 Mass. 504, 508-09 (1940). Allowing Parker to blithely disregard her contractual and legal obligations, at the expense of Global Values' valid business interests and rights, would render the parties' expectations a mere nullity and promote unfair competition. *Systems & Software, Inc. v. Barnes*, 178 Vt. 389, 391 (2005) (restrictive covenants are enforceable unless they are found to be contrary to public policy).

### III. GLOBAL VALUES IS LIKELY TO SUCCEED ON THE MERITS OF ITS TORTIOUS INTERFERENCE CLAIM AGAINST PARKER AND MURETA.

Global Values is also likely to succeed on the merits of its tortious interference claim against Parker and Mureta. A party is liable for tortious interference with a contractual relationship where it intentionally and improperly induced or caused a party to an agreement with the plaintiff to not perform under the contract. *Williams v. Chittenden Trust Co.*, 145 Vt. 76, 80 (1984). A party intentionally induces interference with a contract where, even if it does not desire to interfere with the contract, it knows that interference will be substantially certain to occur. *Id.* at 81. Additionally, interference may be improper even though the contract is terminable at will and there "is no legal right... knowingly [to] invade the contract relation of others solely to promote the intervenor's financial interest." *Id.* at 82-83.

Parker, individually and d/b/a Mureta, has willfully breached her covenants with Global Values, and has tortiously interfered with Global Values' contractual relations with its customers, vendors, suppliers and employees, and continues to do so. Further, Mureta, with full knowledge of Parker's covenants with Global Values, has authorized and induced her to breach them for the benefit of Mureta and its principals, and has thereby tortiously interfered with Global Values' contractual relations with its customers, vendors, suppliers and employees, and continues to do so.

16

In connection with their contractual breaches and tortious interference, Parker and Mureta, have misappropriated Global Values' valuable trade secrets and other confidential information and goodwill, and have been and continue to be unjustly enriched thereby. Therefore, Global Values is thus virtually certain to prevail on the merits of its claim against Parker and Mureta for tortious interference.

### IV. THE BALANCE OF HARDSHIPS TIPS DECIDEDLY IN GLOBAL VALUES' FAVOR.

The balance of hardships in this case weight in Global Values' favor. Parker entered her agreement in connection with the sale of Montpelier Granite Works – which involved Global Values' purchase of customer goodwill – and received consideration for them in the form of proceeds from the sale, a guaranteed three year term of employment, valuable experience, and customer exposure. Parker then blithely ignored these obligations and voluntarily resigned from Global Values and former her own company to directly compete with Global Values. Any harm to Parker is thus self-inflicted, and she remains free to earn her living doing anything other than working for one of Global Values' competitors within 100 miles of Barre, using its trade secrets or confidential information, and soliciting its customers or employees. Mureta not only enticed Parker to breach her agreement, but persisted in doing so despite knowing that Parker's employment with Mureta violated her Employment Agreement. The balance of hardships clearly favors Global Values.

### CONCLUSION

Global Values respectfully asks this Court to grant its Motion for Temporary Restraining Order and Preliminary Injunction and enter the proposed order filed herewith.

17

DATED at Burlington, Vermont, this 23rd day of April, 2021.

                               GLOBAL VALUES, INC.

                               BY:   PAUL FRANK + COLLINS P.C.

                               By: _____
                                       Stephen D. Ellis, Esq.
                                       P.O. Box 1307
                                       Burlington, Vermont 05401
                                       Telephone: 802-658-2311
                                       Fax: 802-658-0042
                                       sellis@pfclaw.com

8223098_2:13760-00005